UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| RAYMOND TIEDE, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | No. 3:19cv589 |
| | ) | |
| JEFFREY CRAWFORD, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS AND
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's September 4, 2019 Order (ECF No. 2), Respondents, by counsel, submit this Response to Petition for Writ of Habeas Corpus and Memorandum in Support of Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Motion for Summary Judgment under Rule 56(c) in response to Petitioner Raymond Tiede's Petition for a Writ of Habeas Corpus (ECF No. 1).

**I.      Introduction**

Petitioner Raymond Tiede, an alien subject to an order of removal, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 arguing that his detention violates the Immigration and Nationality Act § 241, 8 U.S.C. § 1231, as interpreted in *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Petition should be rejected for two reasons.

First, Petitioner's detention is within the six-month period—following the mandatory statutory 90-day removal period—that *Zadvydas* found presumptively reasonable. Under U.S.C. § 1231(a)(C), because Petitioner has not made an application in good faith for travel documents,

1

the 90-day removal period has been extended, so *Zadvydas*'s presumptively reasonable six-month period has not yet begun. Even if the 90-day removal period were not extended, however, it began on April 29, 2019, the "date the order of removal bec[ame] administratively final," 8 U.S.C. § 1231(a)(1)(B)(i). The 90-day removal period therefore expired on July 28, 2019, and the six-month presumptively reasonable detention period therefore extends until January 28, 2020. The Petition should therefore be dismissed as premature.

Second, even if the Petition is not premature, it does not show that there is no likelihood of removal in the reasonably foreseeable future, as required by *Zadvydas*. ICE is continuing its efforts to remove Petitioner to either France—his claimed country of citizenship, which has repeatedly informed ICE that Petitioner is not a citizen—or Cote d'Ivoire—the country that ICE has reason to believe is Petitioner's actual country of origin. There are no structural or diplomatic obstacles to removal to either country, ICE regularly removes aliens to both, and both have been responsive to ICE's requests. Moreover, Petitioner cannot state a *Zadvydas*-based claim because his detention is due to his failure to cooperate with the ICE's efforts to remove him by withholding his actual country of origin. The Petition should be dismissed.

## II.    Factual Background

### A.    Petitioner's Immigration Background and Order of Removal

Petitioner was originally admitted to the United States with a French passport on or about August 28, 2001, at John F. Kennedy International Airport in New York, New York, through the Visa Waiver Program ("VWP"). Ex. A, Declaration of Mark Graham ("Graham Decl.") ¶ 4; Pet. Ex. 1 (ECF No. 1-1) at 2. The VWP enables citizens and nationals of participating countries to travel to the United States for tourism or business for stays of 90 days or less without obtaining a visa. Graham Decl. ¶ 4. Petitioner had authorization to remain in the United States under the

VWP until November 26, 2001. Graham Decl. ¶ 4; Pet. Ex. 1 (ECF No. 1-1) at 2. Petitioner has remained in the United States since that time. Graham Decl. ¶ 4.

On or about November 3, 2009, Petitioner's then-spouse, a U.S. citizen, filed a Form I-130 Petition for Alien Relative on Petitioner's behalf with U.S. Citizenship and Immigration Services ("USCIS"). Graham Decl. ¶ 5. Petitioner concurrently filed a Form I-485 Application to Register Permanent Residence or Adjust Status. Graham Decl. ¶ 5. On June 16, 2010, both the Form I-130 and the Form I-485 were denied by USCIS after Petitioner failed to respond to a request for evidence demonstrating the bona fides of his marriage. Graham Decl. ¶ 5.

On or about April 28, 2019, Petitioner was arrested by U.S Customs and Border Protection ("CBP") at Dulles International Airport in Dulles, Virginia, while waiting for an arriving passenger. Graham Decl. ¶ 6. Records checks showed the Petitioner violated the terms of the VWP by remaining in the United States longer than permitted. Graham Decl. ¶ 6.

On or about April 29, 2019, CBP issued Petitioner CBP Form 845 Order of Removal (Sections 217 and 237) at Dulles International Airport in Dulles, Virginia, pursuant to Section 1187 of Title 8 of United States Code, ordering that Petitioner be removed from the United States. Graham Decl. ¶ 7; Pet. at 6; Pet. Ex. 1 (ECF No. 1-1) at 2. On or about April 30, 2019, the Petitioner was transferred to U.S. Immigration and Customs Enforcement ("ICE") custody. Graham Decl. ¶ 8.

### B.      Efforts to Remove Petitioner

Beginning after Petitioner's detention and continuing to the present, ICE has engaged in efforts to remove Petitioner. Graham Decl. ¶¶ 9-26. Although he asserts that he is a native and citizen of France, Pet. Ex. 1 (ECF No. 1-1) at 3, the French Embassy has stated to ICE that Petitioner is not a French citizen. Graham Decl. ¶¶ 9, 14-15, 19, 21, 23.

On or about May 20, 2019, ICE contacted the Embassy of France in Washington, D.C., requesting information in reference to a travel document fee and proper application. Graham Decl. ¶ 9. On or about May 23, 2019, ICE gave the Petitioner an application for a travel document to France, which Petitioner refused to fill out. Graham Decl. ¶ 10. On or about May 30, 2019, Petitioner was served with Form I-229a Warning for Failure to Depart, pursuant to 8 U.S.C. § 1253. Graham Decl. ¶ 11.

On or about May 31, 2019, an ICE Deportation Officer spoke with Petitioner's immigration attorney of record. Graham Decl. ¶ 12. Petitioner's immigration attorney of record stated that the Petitioner is a citizen and national of Cote d'Ivoire. Graham Decl. ¶ 12.

On or about June 7, 2019, ICE attempted to contact the French Embassy by telephone with no response. Graham Decl. ¶ 13. On or about June 11, 2019, ICE spoke with the French Embassy, which requested any identifying documents in ICE's possession in order to verify Petitioner's claim to French citizenship. Graham Decl. ¶ 14. ICE submitted the birth certificate contained in Petitioner's alien file, which Petitioner had previously submitted to USCIS as part of his November 2009 Form I-485 application, to the French Embassy. Graham Decl. ¶¶ 5, 14.

On June 19, 2019, the French Embassy notified ICE that the birth certificate submitted for identity purposes was fraudulent and French citizenship could not be proven with the submitted document. Graham Decl. ¶ 15. On June 24, 2019, ICE sent a request to Petitioner's immigration attorney of record requesting a follow-up with Petitioner's family regarding any genuine identity documents to prove Petitioner's citizenship. Graham Decl. ¶ 16. ICE also sent a travel document request packet for Cote d'Ivoire to ICE Removal and International Operations ("RIO") at ICE headquarters in Washington, D.C. Graham Decl. ¶ 16. On or about June 28,

2019, post-order custody reviews were conducted; each concluded that continued detention was appropriate. Graham Decl. ¶ 17.

On July 19, 2019, ICE spoke with the Petitioner at the Farmville Detention Center in Farmville, Virginia, about his claimed French citizenship. Graham Decl. ¶ 18. Petitioner reiterated he was a French citizen and denied being a citizen of Cote d'Ivoire. Graham Decl. ¶ 18. Petitioner stated that he was born in Saint Rose on the island of La Reunion, a French territory located in the Indian Ocean off the southeast coast of Africa. Graham Decl. ¶ 18.

On July 24, 2019, ICE spoke with Petitioner's daughter, who in turn faxed a copy of Petitioner's French passport. Graham Decl. ¶ 19. ICE sent the copy of the passport to the French Embassy for review. Graham Decl. ¶ 19. On August 2, 2019, August 14, 2019, August 26, 2019, and September 5, 2019, ICE sent emails to the French Embassy requesting an update on the new document that was submitted for review. Graham Decl. ¶ 20. On September 5, 2019, the French Embassy again stated the Petitioner is not a French citizen. Graham Decl. ¶ 21. The ICE case officer also sent an email to ICE RIO for an update on a possible travel document to Cote d'Ivoire. Graham Decl. ¶ 21. The Embassy of Cote d'Ivoire informed ICE RIO that issuance of a travel document was unlikely without a means to verify Petitioner's identity and citizenship. Graham Decl. ¶ 21. Neither France nor Cote d'Ivoire, however, has stated that it would not accept Petitioner or issue travel documents once presented with verification of his identity. Graham Decl. ¶ 21.

On September 12, 2019, ICE officers took a sworn statement from the Petitioner, in which he affirmed his birth in Saint Rose, La Reunion, and reiterated his claim to French citizenship. Graham Decl. ¶ 22. On October 16, 2019, the French Embassy interviewed the

Petitioner again by video teleconference and again confirmed that the Petitioner's documents were fraudulent and that he was not a citizen of France. Graham Decl. ¶ 23.

On October 23, 2019, ICE served the Petitioner failure to comply paperwork. Graham Decl. ¶ 24. Petitioner remains detained in ICE custody. Graham Decl. ¶ 25.

ICE is continuing its efforts to remove Petitioner to France or Cote d'Ivoire. Graham Decl. ¶ 26. There are no current structural or diplomatic barriers interfering with the United States' ability to effectuate removals of either French or Cote d'Ivoire nationals to their native country. Graham Decl. ¶ 27. Once either France or Cote d'Ivoire issues travel documents for Petitioner, ICE anticipates that it will be able to timely effectuate Petitioner's removal. ICE generally can arrange an alien's removal to either France or Cote d'Ivoire; ICE successfully removed 85 individuals to France in fiscal year 2018,[1] 82 individuals in fiscal year 2017,[2] and 59 individuals in fiscal year 2016.[3] ICE successfully removed 82 individuals to the Cote d'Ivoire in fiscal year 2018,[4] 13 individuals in fiscal year 2017,[5] and 16 individuals in fiscal year 2016.[6]

---

[1] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2018 ICE Enforcement and Removal Operations Report at 18, available at https://www.ice.gov/doclib/about/offices/ero/pdf/eroFY2018Report.pdf.
[2] *Id.*
[3] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2017 ICE Enforcement and Removal Operations Report at 15, available at https://www.ice.gov/sites/default/files/documents/Report/2017/iceEndOfYearFY2017.pdf.
[4] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2018 ICE Enforcement and Removal Operations Report at 18, available at https://www.ice.gov/doclib/about/offices/ero/pdf/eroFY2018Report.pdf (listed as the "Ivory Coast").
[5] *Id.*
[6] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2017 ICE Enforcement and Removal Operations Report at 17, available at https://www.ice.gov/sites/default/files/documents/Report/2017/iceEndOfYearFY2017.pdf.

### III.    Standard of Review

### A.    Motion to Dismissed Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint's legal claims must be supported by factual allegations that "raise a right to relief above the speculative level." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id*. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The Federal Rules of Civil Procedure apply to habeas corpus proceedings. Fed. R. Civ. P. 81(a)(2); *Browder v. Director, Dep't of Corr.*, 434 U.S. 257, 269 (1987). Their applicability is limited, however, by the terms of the habeas corpus statute, which take precedence over the Federal Rules. *Browder*, 434 U.S. at 269 n.14. Under 28 U.S.C. § 2241, a respondent may seek dismissal under Rule 12(b)(6). *See, e.g.*, *Pina v. Miner*, No. CIV.A. 05-1703(HAA), 2005 WL 2277003, at *1 (D.N.J. Sept. 19, 2005) (citing *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1290 (10th Cir. 2001)). "In other words, a motion to dismiss pursuant to Rule 12(b)(6) may be granted when the defendant demonstrates that there is no legal remedy to the alleged wrong." *Id.* And while courts liberally construes petitions, *see, e.g.*, *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003), the requirement of liberal construction does not mean that courts can ignore a petitioner's failure to allege facts that state a plausible claim or that courts must assume the

existence of a genuine issue of material fact where none exists. *Leite v. Warden FCI Williamsburg*, 2016 WL 490044, at *2 (D.S.C. Feb. 9, 2016) (citing *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012)).

### B.    Motion for Summary Judgment Under Rule 56(c)

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met its burden, the non-moving party must show that an issue of fact exists. *Matsushita Elec. Ind. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Harper v. Lindsay Chevrolet Oldsmobile, LLC*, 212 F. Supp. 2d 582, 586 (E.D. Va. 2002). "[T]he mere existence of a scintilla of evidence in support of a non-moving party's position is insufficient to avoid summary judgment." *Bunch v. Caldera*, No. 00-CV-1142, 2001 WL 34366089, at *2 (E.D. Va. Jan. 16, 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "Rather, the court must 'determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant.'" *Id*. (quoting *Anderson*, 477 U.S. at 252).

### IV.   Argument

Petitioner argues that being "denied release after 90 days review by the Respondents violated the equal protection right of the [Fifth][7] Amendment to the United States Constitution

---

[7] Petitioner identifies the Fourteenth Amendment, which applies only to states, instead of the Fifth; the standards are the same. *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1156 (4th Cir. 1997), abrogated on oher grounds by *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012)  ("As a technical matter, however, any equal protection challenge to a federal law must arise under the equal protection component of

and by the due-process clause of the Fifth Amendment" because his continued detention "violates [the Immigration and Nationality Act ("INA")] § 241(2)(6) as interpreted in *Zadvydas* [*v. Davis*, 533 U.S. 678 (2001)]," Pet. at 7, that his "continued detention violates the 90 days statutory removal period" and is "unreasonable and is not authorized," *id*. at 8, and that his "continued detention violates his right to substantive due process by depriving him of his core liberty interest to be free from bodily restraint," *id*. The Petition should be denied because the Petition is premature because it was filed within the *Zadvydas* presumptively reasonable period and Petitioner's detention comports with *Zadzvydas*'s likelihood-of-removal-in-the-reasonably-foreseeable-future standard in any event.

### A.      Legal Background

8 U.S.C. § 1231, also known as Section 241 of the INA, governs the detention and removal of aliens after the entry of an administrative order of removal. *See, e.g.*, *Crespin v. Evans*, 256 F. Supp. 3d 641, 643 (E.D. Va. 2017) ("INA § 241 (8 U.S.C. § 1231) . . . governs detention for aliens who have been ordered removed."). Under Section 1231(a)(1)(A), when an alien has been ordered removed the INA directs that DHS[8] "shall remove" him or her within a period of 90 days, referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). During the removal period, the INA further directs that DHS "shall detain the alien." *Id*. at § 1231(a)(2).

the Fifth Amendment's Due Process Clause, not the Fourteenth Amendment which applies only to states. Regardless of whether the argument is made under the Fourteenth Amendment or the Fifth Amendment, however, the standard for defining the equal protection guarantee is the same.").

[8] 8 U.S.C. § 1231 refers to the Attorney General as possessing authority under the INA. In 2002, Congress abolished the former Immigration and Naturalization Service and transferred its functions to several successor agencies located largely within DHS, including ICE. *See* 6 U.S.C. § 291(a); 8 U.S.C. § 1551, Historical and Statutory Notes. This response therefore refers to DHS as possessing the authority designated by the INA, unless noted otherwise.

Several events can trigger the start of the "removal period." 8 U.S.C. § 1231(a)(1)(B). Relevant here, the removal period generally can begin on "[t]he date the order of removal becomes administratively final." *Id*. at § 1231(a)(1)(B)(i), The removal period, however, "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure." *Id*. at § 1231(a)(C). That is true here, where Petitioner has "provided false information about his country of origin," claiming to be a native of France when he is not and is apparently a native of Cote d'Ivoire. *See St. Louis v. Heron*, No. 10-CV-951A, 2011 WL 2746787, at *3 (W.D.N.Y. July 13, 2011) (finding that petitioner's "removal period extend[ed]" under Section 1231(a)(C) when petitioner, among other things, "provided false information about his country of origin, claiming to be a native of the United States when in fact he is a native of Great Britain"). But even if not extended, the removal period for Petitioner began on April 29, 2019, "[t]he date the order of removal bec[ame] administratively final." *Id*. at § 1231(a)(1)(B)(i); Pet. at 6; Pet. Ex. 1 (ECF No. 1-1) at 2.

8 U.S.C. § 1231(a)(6) states that "[a]n alien ordered removed . . . may be detained beyond the removal period." In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Section 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that aliens' removal from the United States" and "does not permit indefinite detention." *Id*. at 689. To determine if a detention beyond the 90-day removal period comports with the Constitution, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id*. at 699. The Court recognized a six-month detention as presumptively reasonable. *Id*. at 701. "After this 6-month period" from the beginning of the "removal period" and "once the alien provides good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. The "6-month presumption," however, "does not mean that every alien not removed must be released after six months." *Id*. Instead, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

*Zadvydas* thus "establishes a two-pronged inquiry to determine whether § 1231(a)(6) allows detention beyond the 90–day 'removal period.'" *Phillippe v. Willett*, No. 1:08cv1167JCC, 2009 WL 416053, at *4 (E.D. Va. Feb. 18, 2009). "First, a petitioner must show that he has been held for more than six months after the issuance of the final administrative order of removal." *Id*. "Second, the petitioner must show that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. "Because Petitioner bears this burden, ICE can continue to detain" Petitioner "until it has been shown that there is no significant likelihood of removal within the reasonably foreseeable future." *Id*. (quotation marks and citation omitted). Because "*Zadvydas* sets out the framework under which the continued detention of deportees pursuant to § 1231(a)(6) comports with the Constitution," all of Petitioner's claims here—equal protection,[9]

---

[9] Petitioner's equal protection claim fails because he has not alleged that he has been treated differently from others with whom he is similarly situated because of discrimination. *Herman v. Lackey*, 309 F. App'x 778, 785 (4th Cir. 2009) ("To state an equal protection claim under any theory, a plaintiff must plead sufficient facts to demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.") (internal quotation marks and citations omitted). If his claim is that under *Zadvydas* the distinction "between aliens whom DHS is able to remove and those whose removal is extremely unlikely" violates equal protection, that claim fails. *Chavez-Cornejo v. Mukasey*, No. CV-07-2089-PHX-ROS, 2009 WL 151163, at *4 (D. Ariz. Jan. 20, 2009) (rejecting argument that 8 U.S.C. § 1226—which governs the procedures for detaining an alien before a removal decision—violates equal protection clause under *Zadvydas* because "Congress intends to remove all aliens who are not entitled to remain in this country (especially those with final removal orders) and has granted DHS a robust detention authority to ensure the removal of those aliens" and the "distinction, between those aliens whom DHS is able to remove and those whose removal is extremely unlikely, is rational and survives Petitioner's equal protection challenge").

fifth amendment due process, statutory, and substantive due process, Pet. at 7-8—"depend on the two-pronged inquiry promulgated by the Supreme Court" in *Zadvydas*. Phillippe, 2009 WL 416053, at *1, *4 (addressing claims that petitioner's continued detention "violates § 241(a)(6) of the [INA], 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*," "violates his substantive due process rights," and "violates his procedural due process rights").

> **B.     The Petition Should Be Dismissed as Premature Because Petitioner's Detention is Within *Zadvydas*'s Presumptively Reasonable Six-Month Period**

The Petition should be dismissed because Petitioner's continued detention is presumptively reasonable under *Zadvydas*. In *Zadvydas*, the Supreme Court recognized that continued detention is presumptively reasonable for a six-month period following the end of the 90-day removal period. *Zadvydas*, 533 U.S. at 700-701. Under *Zadvydas*, petitions filed before the end of the six-month removal period are premature and should be dismissed. *See Ali v. Barlow*, 446 F. Supp. 2d 604, 609 (E.D. Va. 2006) (dismissing petition filed within the six-month period as "premature" and finding that "courts are consistent in their dismissal of claims made prior to the expiration of the six-month presumptively reasonable period"); *see also Themeus v. U.S. Dep't of Justice*, 643 F. App'x 830, 833 (11th Cir. 2016) ("[T]o state a claim under *Zadvydas*, a § 2241 petitioner must show . . . that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 is filed[.]"); *Tshiteya v. Crawford*, No. 1:13CV894, 2013 WL 6635096, at *3 (E.D. Va. Dec. 16, 2013) (finding that, to show detention is wrongful under *Zadvydas*, "[f]irst, a petitioner must show that he has been held for more than six months after the issuance of the final administrative order of removal.").

Here, Petitioner filed the Petition during the 90-day removal period—and at least before the end of the presumptively reasonable six-month period—so it should be dismissed. The

Petition was filed *during* the 90-day removal period, which has been extended under 8 U.S.C. § 1231(a)(C) because of Petitioner's "fail[ure] . . . to make timely application in good faith for travel or other documents" because of his—according to the French Embassy, falsely—claiming to be a native of France. 8 U.S.C. § 1231(a)(C); *St. Louis*, 2011 WL 2746787, at *3. But even assuming the 90-day removal period has not been extended, it began on April 29, 2019, the "date the order of removal bec[ame] administratively final," 8 U.S.C. § 1231(a)(1)(B)(i); Pet. at 6; Pet. Ex. 1 (ECF No. 1-1) at 2. The 90-day removal period therefore expired on July 28, 2019, and the six-month presumptively reasonable detention period therefore extends until January 28, 2020. In either case, Petitioner's detention is within the *Zadvydas* presumptively reasonable period, and each of his claims—statutory and constitutional—fails. *Sanchez-Acosta v. Sessions*, No. 1:18-CV-00872, 2018 WL 4781177, at *2-3 (E.D. Va. Oct. 2, 2018) (dismissing procedural due process claim because in *Zadvydas* "the Supreme Court held that no additional procedural due process requirements are needed during the removal period itself, and that no additional procedural due process requirements are necessary to continue to detain an alien for the six months following the removal period" and dismissing substantive due process claim because in *Zadvydas* "the Supreme Court implicitly made clear that detention during the removal period does not shock the conscience"). The Petition should thus be dismissed as premature. *Ali*, 446 F. Supp. 2d at 609.

### C.    The Petition Should be Dismissed Because Removal is Reasonably Foreseeable

Even if the Petition were not premature, it should nonetheless be dismissed. To succeed, Petitioner bears the burden to "provide good reason to believe that there is no likelihood of removal in the reasonably foreseeable future." *Ming Hui Lu v. Lynch*, No. 1:15-CV-1100-GBL-MSN, 2016 WL 375053, at *6 (E.D. Va. Jan. 29, 2016) ("[T]he initial burden of proof rests with

the alien to provide good reason to believe that there is no likelihood of removal in the reasonably foreseeable future. Only if the alien makes the initial showing does the burden shift back to the Government.") (internal quotation marks and citations omitted). "Courts have found that removal was not 'reasonably foreseeable' in situations where no country would accept the detainee, the country of origin refused to issue the proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time." *Id*. at *7. Conversely, "removal is 'reasonably foreseeable' when ICE is taking active steps to secure removal at some point in the future." *Clarke v. Kuplinski*, 184 F. Supp. 3d 255, 260 (E.D. Va. 2016) (quotation marks, citation, and alterations omitted). The no-significant-likelihood-of-removal requirement "poses a formidable obstacle where, as in the case of [either France or Cote d'Ivoire], no apparent obstacles impede removal to a country." *Bah v. Barr*, No. 1:19-CV-641, 2019 WL 4247823, at *3 (E.D. Va. Sept. 6, 2019).

Here, Petitioner's removal is reasonably foreseeable. ICE is taking "active steps" to effectuate the removal of Petitioner and continuing its efforts to remove Petitioner to either France or Cote d'Ivoire. Graham Decl. ¶ 26; *Clarke v. Kuplinski*, 184 F. Supp. 3d 255, 260 (E.D. Va. 2016) ("[T]he record reflects consistent, periodic contact between ICE and the Jamaican government. Such contact negates Clarke's argument that ICE has not done anything to effect his removal to Jamaica in the foreseeable future.") (internal quotation marks and citation omitted). Both countries continue to be responsive to ICE's requests for assistance, Graham Decl. ¶¶ 9-26, and neither France nor Cote d'Ivoire has stated that it would not accept Petitioner or issue travel documents once presented with verification of his identity, Graham Decl. ¶ 21. Nor are there any structural or diplomatic obstacles to removal to either France or Cote d'Ivoire. Graham Decl. ¶

26. To the contrary, once either France or Cote d'Ivoire issues travel documents for Petitioner, ICE anticipates that it will be able to timely effectuate Petitioner's removal; ICE successfully removed 85 individuals to France in fiscal year 2018,[10] 82 individuals in fiscal year 2017,[11] and 59 individuals in fiscal year 2016.[12] ICE successfully removed 82 individuals to Cote d'Ivoire in fiscal year 2018,[13] 13 individuals in fiscal year 2017,[14] and 16 individuals in fiscal year 2016.[15] *See Clarke*, 184 F. Supp. 3d at 261 (E.D. Va. 2016) ("[B]oth ICE and the Jamaica government have actively been working together to obtain Clarke's birth certificate so that travel documents can be issued. . . . Although that birth certificate actually belonged to a different Mr. Clarke, Clarke simply has not demonstrated that Jamaica would hesitate to issue a new travel document once the correct birth certificate is located. Accordingly, Clarke has failed to meet his burden of demonstrating that his removal to Jamaica is not reasonably foreseeable."). And even assuming either France or Cote d'Ivoire ultimately refuse to accept Petitioner, ICE would be authorized to remove Petitioner to a third country. 8 U.S.C. § 1231(b)(2)(E)(i)-(vii) (authorizing removal to an alternate countries, including "another country whose government will accept the alien into that country"). Petitioner cannot establish that his removal is not reasonably foreseeable.

---

[10] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2018 ICE Enforcement and Removal Operations Report at 18, available at https://www.ice.gov/doclib/about/offices/ero/pdf/eroFY2018Report.pdf.

[11] *Id.*

[12] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2017 ICE Enforcement and Removal Operations Report at 15, available at https://www.ice.gov/sites/default/files/documents/Report/2017/iceEndOfYearFY2017.pdf.

[13] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2018 ICE Enforcement and Removal Operations Report at 18, available at https://www.ice.gov/doclib/about/offices/ero/pdf/eroFY2018Report.pdf.

[14] *Id.*

[15] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2017 ICE Enforcement and Removal Operations Report at 17, available at https://www.ice.gov/sites/default/files/documents/Report/2017/iceEndOfYearFY2017.pdf.

Petitioner's claims also fail because "an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the [ICE]'s efforts to remove him." *Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003); *Olajide v. B.I.C.E.*, 402 F. Supp. 2d 688, 694 (E.D. Va. 2005) (citing *Pelich*). When, like Petitioner, a detained alien is non-cooperative in ICE's efforts to obtain travel documents, "he cannot legitimately object to his continued detention when that very detention is caused by his own conduct." *Pelich*, 329 F.3d at 1061. As in *Pelich*—where the petitioner "consistently refused to complete the Polish passport application because he is of the view that . . . he is not a Polish citizen, *id*. at 1058—Petitioner "could likely effectuate his own removal (and free himself from detention) by providing the" necessary citizenship information to ICE. *Id*. at 1061. "It naturally follows that his detention is not destined to be indefinite. To the contrary, [Petitioner's] behavior places him within that class of aliens properly detained pursuant to 8 U.S.C. § 1231(a)(1)(C)." *Id*. Thus, Petitioner's continued detention is proper under 8 U.S.C. § 1231(a)(1)(C) "so long as [Petitioner] fails to cooperate fully and honestly with officials to obtain travel documents." *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003) ("We conclude that 8 U.S.C. § 1231(a)(1)(C), interpreted mindful of the concerns underlying *Zadvydas* and *Pelich*, authorizes [ICE's] continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents."). The Petition should therefore be dismissed.

**V.     Conclusion**

For the foregoing reasons, this Court should deny Petitioner's petition for a writ of habeas corpus.

Dated: November 4, 2019                         Respectfully submitted,

                                                G. ZACHARY TERWILLIGER
                                                UNITED STATES ATTORNEY

                                        By:     /s/_____
                                                Jonathan T. Lucier
                                                VSB No. 81303
                                                Attorney for Respondents
                                                Office of the United States Attorney
                                                919 East Main Street, Suite 1900
                                                Richmond, Virginia 23219
                                                Telephone: (804) 819-5400
                                                Fax: (804) 771-2316
                                                Email: jonathan.lucier@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on November 4, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and served the Petitioner, who is a non-ECF user, by depositing a true copy of the same in the U.S. mail in a prepaid envelope addressed as follow:

> Raymond Tiede
> A200397367
> Farmville Detention Center
> 508 Waterworks Road
> Farmville, VA 23901

/s/
Jonathan T. Lucier
VSB No. 81303
Attorney for Respondents
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5400
Fax: (804) 771-2316
Email: jonathan.lucier@usdoj.gov