UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RAYMOND TIEDE, </br></br> Petitioner, </br></br> v. </br></br> JEFFREY CRAWFORD, et al., </br></br> Respondents. | ) </br> ) </br> ) </br> ) Civil No. 3:19cv589-REP-RCY </br> ) </br> ) </br> ) </br> ) |

**DECLARATION OF PAUL TRUMP, SUPERVISORY DETENTION AND DEPORTATION OFFICER**

Pursuant to 28 U.S.C. § 1746, I, Paul Trump, hereby declare and state as follows:

1. I am employed as a Supervisory Detention and Deportation Officer (SDDO) with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) in the Washington, DC Field Office.

2. As a Supervisory Detention and Deportation Officer, I am charged with the responsibility of overseeing the cases of detained aliens in removal proceedings. These duties include the review of alien files for sufficiency, the detention and release of aliens in ICE custody, monitoring the progress of cases through the criminal system, if necessary, and the immigration hearing process, review and completion of post-order custody reviews ("POCRs"), and enforcement of the immigration court's decision, including the execution of removal orders.

3. The following declaration is based on a review of information contained in the alien file of Petitioner Raymond Tiede ("Petitioner"), A200 397 367, records and databases maintained by ICE, and other documents and physical evidence relevant to Petitioner; my own personal knowledge and observations during the course of my official duties; and information conveyed to

me by other law enforcement officials. I am therefore familiar with the facts and circumstances regarding Petitioner's immigration proceedings and custody status.

I.  **DETENTION AND REMOVAL UPDATE**

4. Petitioner remains in ICE custody at ICA Farmville.

5. On or about December 18, 2019, Petitioner was served with a Notice of Failure to Comply, explaining his responsibility to assist DHS in obtaining identity and travel documents, noting his failure to provide such assistance, and requesting compliance. Petitioner was also served a copy of Form I-229a, Warning for Failure to Department and Instruction sheet (Form I-229a), setting forth the various ways in which Petitioner could achieve compliance, including, but not limited to: submission of birth certificates, national identification cards, or any other document issued by a foreign government indicating citizenship, nationality, place of birth, and place of residence prior to entering the United States; provision of names and addresses of family and friends residing in the United States who may contact Petitioner's embassy or consulate in the United States, in order to facilitate the issuance of a travel document; and provision of names and addresses of family and friends residing in Petitioner's country of citizenship who may contact Petitioner's government in reference to issuing a travel document.

6. The same notification and request for compliance was served on Petitioner on or about January 16, 2020, February 24, 2020, May 5, 2020, June 11, 2020, and July 23, 2020.

7. On or about April 10, 2020, DHS received an additional copy of the Petitioner's French Passport and birth certificate from Petitioner's daughter. No original documents were provided.

8. On or about April 23, 2020, DHS conducted an additional interview with Petitioner, during which he maintained he is a French citizen.

9. On or about April 29, 2020, DHS contacted Petitioner's daughter again. Petitioner's daughter claimed she has no other identity or travel documents other than the copies of Petitioner's French passport and birth certificate. Petitioner's daughter confirmed she had no original documents.

10. On or about May 12, 2020, ICE Enforcement and Removal Operations ("ERO") contacted the Assistant Attaché for Removals (AAR) in Frankfurt, Germany requesting assistance in contacting French authorities to research Petitioner's purported identity against their systems and conduct another review of the documents Petitioner provided.

11. On or about May 14, 2020, the AAR in Frankfurt responded that Petitioner's purported identity was unknown to French officials after a search of their systems. French authorities also confirmed with the City Hall of Sainte Rose, La Reunion, that Petitioner's purported birth certificate was fraudulent.

12. On or about May 14, 2020, DHS contacted the AAR in Dakar, Senegal, for assistance, requesting that a search be conducted of Petitioner's purported identity in systems maintained by the government of Ivory Coast. The AAR in Dakar responded that the request would be forwarded to the U.S. Embassy in Abidjan, Ivory Coast, but indicated that due to the ongoing global pandemic, a response may take longer than normal.

13. On or about May 14, 2020, DHS contacted INTERPOL in Washington, DC requesting assistance. INTERPOL opened a case and forwarded Petitioner's fingerprints and his purported identifying information to Ivory Coast requesting any information pertaining to Petitioner. INTERPOL has not yet received a response from Ivory Coast.

14. On or about June 4, 2020, DHS interviewed Petitioner and again explained that the documents he previously submitted in support of his claim to French citizenship were determined

to be fraudulent.  DHS inquired whether Petitioner knew anyone who could assist him in obtaining proof of his citizenship in France or any other country.  Petitioner informed DHS that his friends in France could assist, but that their phone numbers were in his phone, which had been secured by the detention facility upon his arrival.

15. On or about June 16, 2020, DHS provided Petitioner with the phone numbers he requested from his personal phone.

16. On or about July 30, 2020, Petitioner was interviewed by DHS to determine whether he was able to contact any friends or family members in France.  Petitioner informed DHS that one of the phone numbers was no longer in service and that no one answered the other phone number.  However, Petitioner stated that his daughter found a French identification card issued by the French embassy in Washington, DC, and had mailed a copy to Petitioner's attorney.  Petitioner stated his attorney's name is "Jason" and that he does not represent Petitioner in the instant habeas.

17. On or about July 30, 2020, DHS contacted Petitioner's attorney, Jason West.  Mr. West advised that he would email a color copy of Petitioner's consular identification card to ERO.

18. On or about August 3, 2020, Petitioner's attorney, Mr. West, emailed a copy of the consular identification card to DHS with a sworn statement from Petitioner describing the circumstances under which he claims to have applied for and obtained this card.

19. On or about August 4, 2020, DHS submitted a copy of this card to the French consulate with a renewed request for travel documents.  Assuming this card is determined to be authentic by French authorities, DHS anticipates a travel document would be issued for Petitioner.  DHS would then schedule his removal to France via a commercial carrier.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge, and belief.

5

Dated:  August 4, 2020    _____
Paul Trump, Supervisory Detention and Deportation Officer
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

5