UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| RAYMOND TIEDE, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | No. 3:19cv589 |
| | ) | |
| JEFFREY CRAWFORD, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS AND
MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's September 4, 2019 Order (ECF No. 2), and September 17, 2020

Order[1] (ECF No. 14), Respondents, by counsel, submit this Response to Petition for Writ of

Habeas Corpus and Memorandum in Support of Respondents' Renewed Motion to Dismiss

under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, Renewed Motion for

Summary Judgment under Rule 56(c) in response to Petitioner Raymond Tiede's Petition for a

Writ of Habeas Corpus (ECF No. 1).

**I.      Introduction**

Petitioner Raymond Tiede, an alien subject to an order of removal, filed a Petition for a

Writ of Habeas Corpus under 28 U.S.C. § 2241 arguing that his detention violates the

Immigration and Nationality Act § 241, 8 U.S.C. § 1231, as interpreted in *Zadvydas v. Davis*,

533 U.S. 678 (2001). The Petition should be rejected.

---

[1] The Court's September 17, 2020 Order denied Respondents original Motions to Dismiss (ECF
No. 3) or, in the alternative, for summary judgment (ECF No. 4), without prejudice to refile
within 40 days from the date of the Order. Sept. 17, 2020 Order (ECF No. 14) at 4.

Tiede's Petition does not show that there is no likelihood of removal in the reasonably foreseeable future, as required by *Zadvydas*. This is because Tiede is refusing to cooperate fully and honestly with ICE to secure travel documents. Tiede has repeatedly claimed that he is a French citizen, but French authorities have consistently informed ICE that Tiede's purported French documentation is fraudulent. Instead, ICE has reasoned to believe that Tiede is a citizen of Cote d'Ivoire, based on Tiede's immigration counsel of record's statement to ICE, and Tiede has not cooperated with ICE's efforts to remove Tiede to Cote d'Ivoire. Tiede's continued detention is thus a direct result of his lack of cooperation, and he cannot meet his burden to show that there is no significant likelihood of his removal in the foreseeable future. The Petition should thus be dismissed.

## II. Factual Background

### A. Petitioner's Immigration Background and Order of Removal

Tiede was originally admitted to the United States with a French passport on or about August 28, 2001, at John F. Kennedy International Airport in New York, New York, through the Visa Waiver Program ("VWP"). Declaration of Mark Graham ("Graham Decl.") ¶ 4, Ex. A (ECF No. 5-1) to Resp'ts' Resp. to Pet. and Mem. in Supp. Mot. to Dismiss and for Summ J.; Pet. Ex. 1 (ECF No. 1-1) at 2. The VWP enables citizens and nationals of participating countries to travel to the United States for tourism or business for stays of 90 days or less without obtaining a visa. Graham Decl. ¶ 4. Tiede had authorization to remain in the United States under the VWP until November 26, 2001. Graham Decl. ¶ 4; Pet. Ex. 1 (ECF No. 1-1) at 2. Tiede has remained in the United States since that time. Graham Decl. ¶ 4.

On or about November 3, 2009, Tiede's then-spouse, a U.S. citizen, filed a Form I-130 Petition for Alien Relative on Tiede's behalf with U.S. Citizenship and Immigration

Services ("USCIS"). Graham Decl. ¶ 5. Tide concurrently filed a Form I-485 Application to Register Permanent Residence or Adjust Status. Graham Decl. ¶ 5. On June 16, 2010, both the Form I-130 and the Form I-485 were denied by USCIS after Tiede failed to respond to a request for evidence demonstrating the bona fides of his marriage. Graham Decl. ¶ 5.

On or about April 28, 2019, Tiede was arrested by U.S Customs and Border Protection ("CBP") at Dulles International Airport in Dulles, Virginia, while waiting for an arriving passenger. Graham Decl. ¶ 6. Records checks showed Tiede violated the terms of the VWP by remaining in the United States longer than permitted. Graham Decl. ¶ 6.

On or about April 29, 2019, CBP issued Tiede CBP Form 845 Order of Removal (Sections 217 and 237) at Dulles International Airport in Dulles, Virginia, pursuant to 8 U.S.C. § 1187, ordering that Tiede be removed from the United States. Graham Decl. ¶ 7; Pet. at 6; Pet. Ex. 1 (ECF No. 1-1) at 2. On or about April 30, 2019, Tiede was transferred to U.S. Immigration and Customs Enforcement ("ICE") custody. Graham Decl. ¶ 8.

**B.      Efforts to Remove Petitioner Prior to Respondents' Initial Motions**

Beginning after Tiede's detention and continuing to the present, ICE has engaged in efforts to remove Tiede. Ex. A, Declaration of Paul Trump ("Oct. 27 Trump Decl.") ¶¶ 5-10; Graham Decl. ¶¶ 9-26; Declaration of Paul Trump ("Aug. 5 Trump Decl.") ¶¶ 5-19, Ex. A (ECF No. 13-1) to Resp'ts' Notice Of Status Update.

Although Tiede asserts that he is a native and citizen of France, Pet. Ex. 1 (ECF No. 1-1) at 3, the French Embassy has stated to ICE that Tiede is not a French citizen. Graham Decl. ¶¶ 9, 14-15, 19, 21, 23.

On or about May 20, 2019, ICE contacted the Embassy of France in Washington, D.C., requesting information in reference to a travel document fee and proper application. Graham Decl. ¶ 9. On or about May 23, 2019, ICE gave Tiede an application for a travel document to

France, which Tiede refused to fill out. Graham Decl. ¶ 10. On or about May 30, 2019, Tiede was served with Form I-229a Warning for Failure to Depart, pursuant to 8 U.S.C. § 1253. Graham Decl. ¶ 11.

On or about May 31, 2019, an ICE Deportation Officer spoke with Tiede's immigration attorney of record. Graham Decl. ¶ 12. Tiede's immigration attorney of record stated that Tiede is a citizen and national of Cote d'Ivoire. Graham Decl. ¶ 12.

On or about June 7, 2019, ICE attempted to contact the French Embassy by telephone with no response. Graham Decl. ¶ 13. On or about June 11, 2019, ICE spoke with the French Embassy, which requested any identifying documents in ICE's possession in order to verify Tiede's claim to French citizenship. Graham Decl. ¶ 14. ICE submitted the birth certificate contained in Tiede's alien file, which Tiede had previously submitted to USCIS as part of his November 2009 Form I-485 application, to the French Embassy. Graham Decl. ¶¶ 5, 14.

On June 19, 2019, the French Embassy notified ICE that the birth certificate submitted for identity purposes was fraudulent and French citizenship could not be proven with the submitted document. Graham Decl. ¶ 15. On June 24, 2019, ICE sent a request to Tiede's immigration attorney of record requesting a follow-up with Tiede's family regarding any genuine identity documents to prove Tiede's citizenship. Graham Decl. ¶ 16. ICE also sent a travel document request packet for Cote d'Ivoire to ICE Removal and International Operations ("RIO") at ICE headquarters in Washington, D.C. Graham Decl. ¶ 16. On or about June 28, 2019, post-order custody reviews were conducted; each concluded that continued detention was appropriate. Graham Decl. ¶ 17.

On July 19, 2019, ICE spoke with Tiede at the Farmville Detention Center in Farmville, Virginia, about his claimed French citizenship. Graham Decl. ¶ 18. Tiede reiterated he was a

French citizen and denied being a citizen of Cote d'Ivoire. Graham Decl. ¶ 18. Tiede stated that he was born in Saint Rose on the island of La Reunion, a French territory located in the Indian Ocean off the southeast coast of Africa. Graham Decl. ¶ 18.

On July 24, 2019, ICE spoke with Tiede's daughter, who in turn faxed a copy of Tiede's French passport. Graham Decl. ¶ 19. ICE sent the copy of the passport to the French Embassy for review. Graham Decl. ¶ 19. On August 2, 2019, August 14, 2019, August 26, 2019, and September 5, 2019, ICE sent emails to the French Embassy requesting an update on the new document that was submitted for review. Graham Decl. ¶ 20. On September 5, 2019, the French Embassy again stated Tiede is not a French citizen. Graham Decl. ¶ 21. The ICE case officer also sent an email to ICE RIO for an update on a possible travel document to Cote d'Ivoire. Graham Decl. ¶ 21. The Embassy of Cote d'Ivoire informed ICE RIO that issuance of a travel document was unlikely without a means to verify Tiede's identity and citizenship. Graham Decl. ¶ 21.

On September 12, 2019, ICE officers took a sworn statement from Tiede, in which he affirmed his birth in Saint Rose, La Reunion, and reiterated his claim to French citizenship. Graham Decl. ¶ 22. On October 16, 2019, the French Embassy interviewed Tiede again by video teleconference and again confirmed that Tiede's documents were fraudulent and that he was not a citizen of France. Graham Decl. ¶ 23.

On October 23, 2019, ICE served Tiede failure to comply paperwork. Graham Decl. ¶ 24.

### C.      Efforts to Remove Petitioner Following Respondents' Initial Motions and Prior to Respondents' August 2020 Status Update

On or about August 3, 2020, Tiede's attorney in his removal proceedings emailed a copy of a French consular identification card to the Department of Homeland Security with a sworn statement from Tiede describing the circumstances under which he claims to have applied for and obtained this card. Aug. 5 Trump Decl. ¶¶ 16-18. On or about August 4, 2020, DHS

submitted a copy of this card to the French consulate with a renewed request for travel documents. Aug. 5 Trump Decl. ¶ 19. Neither France nor Cote d'Ivoire, however, has stated that it would not accept Tiede or issue travel documents once presented with verification of his identity. Graham Decl. ¶ 21.

**D.      Efforts to Remove Petitioner Following Respondents' August 2020 Status Update**

Tiede remains detained in ICE custody. Ex. A, Oct. 27 Trump Decl. ¶ 4. ICE is continuing its efforts to remove Tiede to France or Cote d'Ivoire. Ex. A, Oct. 27 Trump Decl. ¶¶ 5-10.

On or about September 11, 2020, DHS contacted the Assistant Attaché for Removals (AAR) in Dakar, Senegal—the nearest AAR to Cote d'Ivoire—to request an update on prior request for assistance. Ex. A, Oct. 27 Trump Decl. ¶ 5. DHS has not yet received a reply. Ex. A, Oct. 27 Trump Decl. ¶ 5.

On or about September 17, 2020, the ICE Forensic Document Laboratory determined that a version of the consular identification card provided by Tiede appears to exist, but it was unable to verify the authenticity of the card. Ex. A, Oct. 27 Trump Decl. ¶ 6.

On or about October 21, 2020, DHS contacted INTERPOL to inquire whether the Cote d'Ivoire had responded to its May 2020 inquiry regarding Petitioner's identity. Ex. A, Oct. 27 Trump Decl. ¶ 7. DHS has not yet received a response from INTERPOL. Ex. A, Oct. 27 Trump Decl. ¶ 7.

On or about August 13, August 20, and September 2, 2020, DHS contacted the French Consulate regarding Tiede's newly provided consular identification card. Ex. A, Oct. 27 Trump Decl. ¶ 8.

On or about October 21, 2020, the French Consulate responded to DHS's inquiries. Ex. A, Oct. 27 Trump Decl. ¶ 9. According to the consulate, the consular card that Tiede submitted was obtained on the basis of a false birth certificate and the accompanying statement from Tiede has no probative value in matters of French nationality. Ex. A, Oct. 27 Trump Decl. ¶ 9. The French Consulate advised that the only remaining solution was for Tiede to apply for a Certificate of French Nationality. Ex. A, Oct. 27 Trump Decl. ¶ 9.

On or about October 23, 2020, DHS informed Tiede and his immigration attorney of record of the French Consulate's finding and advisal. Ex. A, Oct. 27 Trump Decl. ¶ 10. DHS requested that Tiede initiate the process of applying for a Certificate of French Nationality. Ex. A, Oct. 27 Trump Decl. ¶ 10.

There are no current structural or diplomatic barriers interfering with the United States' ability to effectuate removals of either French or Cote d'Ivoire nationals to their native country. Graham Decl. ¶ 27. Once either France or Cote d'Ivoire issues travel documents for Tiede, ICE anticipates that it will be able to timely effectuate Tiede's removal. ICE generally can arrange an alien's removal to either France or Cote d'Ivoire; ICE successfully removed 85 individuals to France in fiscal year 2018,[2] 82 individuals in fiscal year 2017,[3] and 59 individuals in fiscal year

---

[2] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2018 ICE Enforcement and Removal Operations Report at 18, available at
https://www.ice.gov/doclib/about/offices/ero/pdf/eroFY2018Report.pdf.
[3] *Id*.

2016.[4] ICE successfully removed 82 individuals to the Cote d'Ivoire in fiscal year 2018,[5] 13 individuals in fiscal year 2017,[6] and 16 individuals in fiscal year 2016.[7]

## III.    Standard of Review

### A.    Motion to Dismissed Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint's legal claims must be supported by factual allegations that "raise a right to relief above the speculative level." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." *Id*. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The Federal Rules of Civil Procedure apply to habeas corpus proceedings. Fed. R. Civ. P. 81(a)(2); *Browder v. Director, Dep't of Corr.*, 434 U.S. 257, 269 (1987). Their applicability is

---

[4] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2017 ICE Enforcement and Removal Operations Report at 15, available at https://www.ice.gov/sites/default/files/documents/Report/2017/iceEndOfYearFY2017.pdf.
[5] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2018 ICE Enforcement and Removal Operations Report at 18, available at https://www.ice.gov/doclib/about/offices/ero/pdf/eroFY2018Report.pdf (listed as the "Ivory Coast").
[6] *Id*.
[7] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2017 ICE Enforcement and Removal Operations Report at 17, available at https://www.ice.gov/sites/default/files/documents/Report/2017/iceEndOfYearFY2017.pdf.

limited, however, by the terms of the habeas corpus statute, which take precedence over the Federal Rules. *Browder*, 434 U.S. at 269 n.14. Under 28 U.S.C. § 2241, a respondent may seek dismissal under Rule 12(b)(6). *See, e.g.*, *Pina v. Miner*, No. CIV.A. 05-1703(HAA), 2005 WL 2277003, at *1 (D.N.J. Sept. 19, 2005) (citing *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1290 (10th Cir. 2001)). "In other words, a motion to dismiss pursuant to Rule 12(b)(6) may be granted when the defendant demonstrates that there is no legal remedy to the alleged wrong." *Id.* And while courts liberally construes petitions, *see, e.g.*, *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003), the requirement of liberal construction does not mean that courts can ignore a petitioner's failure to allege facts that state a plausible claim or that courts must assume the existence of a genuine issue of material fact where none exists. *Leite v. Warden FCI Williamsburg*, 2016 WL 490044, at *2 (D.S.C. Feb. 9, 2016) (citing *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012)).

### B. Motion for Summary Judgment Under Rule 56(c)

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met its burden, the non-moving party must show that an issue of fact exists. *Matsushita Elec. Ind. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Harper v. Lindsay Chevrolet Oldsmobile, LLC*, 212 F. Supp. 2d 582, 586 (E.D. Va. 2002). "[T]he mere existence of a scintilla of evidence in support of a non-moving party's position is insufficient to avoid summary judgment." *Bunch v. Caldera*, No. 00-CV-1142, 2001 WL 34366089, at *2 (E.D. Va. Jan. 16, 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "Rather,

the court must 'determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant.'" *Id.* (quoting *Anderson*, 477 U.S. at 252).

## IV.     Argument

Tiede argues that his continued detention "violate[s] the equal protection right of the [Fifth][8] Amendment to the United States Constitution" and the "due-process clause of the Fifth Amendment" because his continued detention "violates [the Immigration and Nationality Act ("INA")] § 241(2)(6) as interpreted in *Zadvydas* [*v. Davis*, 533 U.S. 678 (2001)]," Pet. at 7, that his "continued detention violates the 90 days statutory removal period" and is "unreasonable and is not authorized," *id*. at 8, and that his "continued detention violates his right to substantive due process by depriving him of his core liberty interest to be free from bodily restraint," *id*.

The Petition should be denied because Tiede's continued detention pending his removal comports with *Zadzvydas*'s likelihood-of-removal-in-the-reasonably-foreseeable-future standard.

### A.     Legal Background

8 U.S.C. § 1231, also known as Section 241 of the INA, governs the detention and removal of aliens after the entry of an administrative order of removal. *See, e.g.*, *Crespin v. Evans*, 256 F. Supp. 3d 641, 643 (E.D. Va. 2017) ("INA § 241 (8 U.S.C. § 1231) . . . governs detention for aliens who have been ordered removed."). Under Section 1231(a)(1)(A), when an

---

[8] Petitioner identifies the Fourteenth Amendment, which applies only to states, instead of the Fifth; the standards are the same. *Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc.*, 106 F.3d 1146, 1156 (4th Cir. 1997), abrogated on other grounds by *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012)  ("As a technical matter, however, any equal protection challenge to a federal law must arise under the equal protection component of the Fifth Amendment's Due Process Clause, not the Fourteenth Amendment which applies only to states. Regardless of whether the argument is made under the Fourteenth Amendment or the Fifth Amendment, however, the standard for defining the equal protection guarantee is the same.").

alien has been ordered removed the INA directs that DHS[9] "shall remove" him or her within a period of 90 days, referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). During the removal period, the INA further directs that DHS "shall detain the alien." *Id*. at § 1231(a)(2).

Several events can trigger the start of the "removal period." 8 U.S.C. § 1231(a)(1)(B). Relevant here, the removal period generally can begin on "[t]he date the order of removal becomes administratively final." *Id*. at § 1231(a)(1)(B)(i). The removal period, however, "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure." *Id*. at § 1231(a)(C). That is true here, where Tiede has "provided false information about his country of origin," claiming to be a native of France when he is not and is apparently a native of Cote d'Ivoire. *See St. Louis v. Heron*, No. 10-CV-951A, 2011 WL 2746787, at *3 (W.D.N.Y. July 13, 2011) (finding that petitioner's "removal period extend[ed]" under Section 1231(a)(C) when petitioner, among other things, "provided false information about his country of origin, claiming to be a native of the United States when in fact he is a native of Great Britain").

8 U.S.C. § 1231(a)(6) states that "[a]n alien ordered removed . . . may be detained beyond the removal period." In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Section 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that aliens' removal from the United States" and "does not permit indefinite detention." *Id*. at 689. To determine if a detention beyond the 90-day removal period

---

[9] 8 U.S.C. § 1231 refers to the Attorney General as possessing authority under the INA. In 2002, Congress abolished the former Immigration and Naturalization Service and transferred its functions to several successor agencies located largely within DHS, including ICE. *See* 6 U.S.C. § 291(a); 8 U.S.C. § 1551, Historical and Statutory Notes. This response therefore refers to DHS as possessing the authority designated by the INA, unless noted otherwise.

comports with the Constitution, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.* at 699. The Court recognized a six-month detention as presumptively reasonable. *Id.* at 701. "After this 6-month period" and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The "6-month presumption," however, "does not mean that every alien not removed must be released after six months." *Id.* Instead, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

*Zadvydas* thus "establishes a two-pronged inquiry to determine whether § 1231(a)(6) allows detention beyond the 90–day 'removal period.'" *Phillippe v. Willett*, No. 1:08cv1167JCC, 2009 WL 416053, at *4 (E.D. Va. Feb. 18, 2009). "First, a petitioner must show that he has been held for more than six months after the issuance of the final administrative order of removal." *Id.* Relevant to Respondents' renewed motion to dismiss or, in the alternative, for summary judgement, "[s]econd, the petitioner must show that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* "Because Petitioner bears this burden, ICE can continue to detain" the petitioner "until it has been shown that there is no significant likelihood of removal within the reasonably foreseeable future." *Id.* (quotation marks and citation omitted). Because "*Zadvydas* sets out the framework under which the continued detention of deportees pursuant to § 1231(a)(6) comports with the Constitution," all of Tiede's claims here—equal protection,[10]

---

[10] Petitioner's equal protection claim fails because he has not alleged that he has been treated differently from others with whom he is similarly situated because of discrimination. *Herman v. Lackey*, 309 F. App'x 778, 785 (4th Cir. 2009) ("To state an equal protection claim under any theory, a plaintiff must plead sufficient facts to demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of

fifth amendment due process, statutory, and substantive due process, Pet. at 7-8—"depend on the

two-pronged inquiry promulgated by the Supreme Court" in *Zadvydas*. Phillippe, 2009 WL

416053, at *1, *4 (addressing claims that petitioner's continued detention "violates § 241(a)(6)

of the [INA], 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*," "violates his substantive due

process rights," and "violates his procedural due process rights").

> **B.** **Because Tiede is Refusing to Cooperate Fully and Honestly with USCIS to Secure Travel Documents, Tiede Cannot Meet His Burden to Show There is No significant Likelihood of Removal, and the Petition Should Therefore be Dismissed[11]**

To succeed, Tiede bears the burden to "provide good reason to believe that there is no

likelihood of removal in the reasonably foreseeable future." *Ming Hui Lu v. Lynch*, No. 1:15-CV-

1100-GBL-MSN, 2016 WL 375053, at *6 (E.D. Va. Jan. 29, 2016) ("[T]he initial burden of

proof rests with the alien to provide good reason to believe that there is no likelihood of removal

in the reasonably foreseeable future. Only if the alien makes the initial showing does the burden

shift back to the Government.") (internal quotation marks and citations omitted).

---

intentional or purposeful discrimination.") (internal quotation marks and citations omitted). If his claim is that under *Zadvydas* the distinction "between aliens whom DHS is able to remove and those whose removal is extremely unlikely" violates equal protection, that claim fails. *Chavez-Cornejo v. Mukasey*, No. CV-07-2089-PHX-ROS, 2009 WL 151163, at *4 (D. Ariz. Jan. 20, 2009) (rejecting argument that 8 U.S.C. § 1226—which governs the procedures for detaining an alien before a removal decision—violates equal protection clause under *Zadvydas* because "Congress intends to remove all aliens who are not entitled to remain in this country (especially those with final removal orders) and has granted DHS a robust detention authority to ensure the removal of those aliens" and the "distinction, between those aliens whom DHS is able to remove and those whose removal is extremely unlikely, is rational and survives Petitioner's equal protection challenge").

[11] This section is responsive to the Court's order that Respondents' renewed motions "should address instances where the detainee's lack of removal is attributable to the detainee's lack of cooperation and where a detention is as prolonged as that of Tiede here." Sept. 17, 2020 Order (ECF No. 14) at 4.

As in this case, "when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future." *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003). As the Ninth Circuit reasoned in *Lema*, a court "cannot know whether an alien's removal is a 'remote possibility' until the alien makes a full and honest effort to secure travel documents." *Id.* (quoting *Zadvydas*, 533 U.S. at 690). "A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal." *Id.* at 856-57. "Moreover, the due process concerns that motivated the Supreme Court in *Zadvydas* do not apply when an alien may have the keys to freedom in his pocket." *Id.* at 857 (internal quotation marks and citation omitted). Thus, a petitioner's continued detention is proper under 8 U.S .C. § 1231(a)(1)(C) "so long as [the petitioner] fails to cooperate fully and honestly with officials to obtain travel documents." *Id.* ("We conclude that 8 U.S.C. § 1231(a)(1)(C), interpreted mindful of the concerns underlying *Zadvydas* and *Pelich* [*v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003)], authorizes [ICE's] continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents."). *Pelich*, 329 F.3d at 1061 ("We [] join the existing chorus of courts and hold that an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the [ICE]'s efforts to remove him."); *Olajide v. B.I.C.E.*, 402 F. Supp. 2d 688, 694 (E.D. Va. 2005) (citing *Pelich*).

Here, because Tiede is refusing to cooperate fully and honestly with officials to secure travel documents from either France or Cote d'Ivoire, Tiede cannot meet his burden to show there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, that

Tiede has not yet been removed is, as the Court found, "in large measure, the product of Tiede's own dishonesty." Sept. 17, 2020 Order (ECF No. 14) at 4. Although Tiede claims to be a French citizen, the information and documentation that Tiede has provided has been consistently found to be fraudulent by French authorities. Tiede, when presented with a travel document application for France, refused to fill it out. Graham Decl. ¶ 10. The French Embassy as notified ICE that the birth certificate that Tiede submitted for identity purposes was fraudulent and French citizenship could not be proven with the submitted document. Graham Decl. ¶ 15. After being presented with Tiede's French passport, the French Embassy again stated Tiede is not a French citizen. Graham Decl. ¶¶ 19, 21. After conducting an interview with Tiede, the French Embassy in again confirmed that Tiede's documents were fraudulent and that he was not a citizen of France. Graham Decl. ¶ 23. And after reviewing the consular card that Tiede submitted, French authorities stated that it was obtained on the basis of a false birth certificate. Ex. A, Oct. 27 Trump Decl. ¶ 9. In light of that, ICE has also investigated Tiede's counsel's statement that Tiede was a citizen of Cote d'Ivoire. Graham Decl. ¶ 12. The Embassy of Cote d'Ivoire, however, has informed ICE that issuance of a travel document was unlikely without a means to verify Tiede's identity and citizenship, which Tiede has not provided. Graham Decl. ¶ 21.

In "instances where the detainee's lack of removal is attributable to the detainee's lack of cooperation" courts have found appropriate the petitioner's continued detention pending removal, including "where a detention is as prolonged as that of Tiede here," Sept. 17, 2020 Order (ECF No. 14) at 4, now

In *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003), the petitioner had been detained for approximately 30 months. *Id.* at 1058 ("Pelich has been in INS custody since November 21, 2000."). The petitioner—who claimed German citizenship but had his passport application to

Germany denied—"consistently refused to complete" a Polish passport application provided by the Polish consulate because the petitioner "[wa]s of the view that, given his parents' backgrounds, he is not a Polish citizen." *Id*. The court reasoned that "it [wa]s eminently reasonable for [ICE] to believe [the petitioner] is Polish" because "[t]he record reflects that Pelich was born in Poland, lived there for over twenty years, and reported on his refugee application that he was a Polish national." *Id*. at 1061. The court thus held that the petitioner "f[ell] within the category of non-cooperative detainee" and thus could not "legitimately object to his continued detention when that very detention is caused by his own conduct. Pelich could likely effectuate his own removal (and free himself from detention) by providing the Polish government with the requested information." *Id*.

In *Lema v. I.N.S.*, 341 F.3d 853 (9th Cir. 2003), the petitioner had been detained for two years. *Id*. at 854 ("Lema has been held in INS custody awaiting the issuance of travel documents by Ethiopia for two years."). The petitioner applied to the Ethiopian Embassy for travel documents, "listing his nationality as 'Eritrea[n]/Ethiopia[n],'" but on a subsequent call with an Ethiopian consular official "allegedly told the official that he is Eritrean, not Ethiopian." *Id*. at 855. Because the petitioner said he was Eritrean, "Ethiopian officials decided not to grant him travel documents," and the petitioner then did not reapply "to Ethiopia for travel documents or furnish[] evidence corroborative of his Ethiopian nationality to Ethiopia despite a request by the INS that he do so." *Id*. The court found that "Ethiopia's continuing refusal to provide Lema with travel documents appears to be a result of Lema's continuing failure to cooperate." *Id*. at 857.

In *Kourouma v. Warden*, No. 6:18-CV-01150, 2019 WL 2895842, (W.D. La. Apr. 29, 2019), report and recommendation adopted, No. 6:18-CV-01150, 2019 WL 2895706 (W.D. La. July 2, 2019), the petitioner had been detained for 20 months. *Id*. at *1 ("On July 13, 2017,

Petitioner was taken into ICE custody."). During his removal proceedings, the petitioner, a native and citizen of Liberia, told the consulate that "he used a false French passport to enter the United States," and "because he provided this information, the [Liberian] Embassy has to investigate and, thus, the [removal] process [wa]s delayed." *Id*. The court found that the "the delay in the issuance of a travel document is a result of [the petitioner's] inconsistent statements regarding his arrival to the United States" and thus he "cannot establish that he cannot be removed in the reasonably foreseeable future." *Id*. at *2.

In *Vardanyan v. Gonzales*, No. 1:07CV01246OWWTAGHC, 2008 WL 4792968 (E.D. Cal. Oct. 31, 2008), report and recommendation adopted, No. 107CV01246OWWTAG(HC), 2009 WL 330843 (E.D. Cal. Feb. 10, 2009), the petitioner had been detained for 20 months. *Id*. at *2 ("Petitioner has been in ICE custody following a final order of removal since February 8, 2007."). The petitioner claimed Armenian citizenship, but the Armenian government stated that the petitioner's passport was fraudulent and refused to comply with the petitioner's travel documentation. *Id*. The court found that "that Petitioner has not cooperated in his removal and that, in fact, Petitioner's misrepresentations regarding his identity and nationality have prevented Respondents from successfully effecting his removal." *Id*. at *5.

In *Diallo v. Pereira*, No. CIVA AW-07-348, 2007 WL 5230798 (D. Md. June 29, 2007), the petitioner had been detained for 20 months. *Id*. at *1 ("Petitioner was taken into ICE custody on October 13, 2005."). The petitioner was believed to be a native of Guinea and a citizen of Togo who had stated in his marriage license that he was born in Guinea but during removal proceedings claimed he was Haitian. *Id*. at *2. When interviewed, the petitioner "did not know the colors of the Haitian flag, the name of the President of Haiti, the denominations of Haitian currency, or what is Haitian Independence Day" and was unable to locate on a map the alleged

city of his birth in Haiti. *Id*. ay *2. The court found that "the delay [in the petitioner's removal] is directly attributable to Petitioner's failure to cooperate by repeatedly providing authorities with inconsistent information" and thus "Petitioner's removal, and thus his continued confinement pending removal, are the direct result his failure to cooperate." *Id*. at *3.

Here, as in *Pelich*, *Lema*, *Kourouma*, *Vardanyan*, and *Diallo*, the delay in Tiede's removal is a result of his instance on his French citizenship that the French authorities have repeatedly found to be fraudulent. Like those cases, Tiede "could likely effectuate his own removal (and free himself from detention) by providing the" necessary citizenship information to ICE. *Pelich*, 329 F.3d at 1061. "It naturally follows that his detention is not destined to be indefinite. To the contrary, [Tiede's] behavior places him within that class of aliens properly detained pursuant to 8 U.S.C. § 1231(a)(1)(C)." *Id*. Because Tiede, based on the French authorities' representations to ICE, is not French and because Tiede has not provided any documentation or other information that ICE can use to verify that—as Tiede's immigration counsel of record stated—he is a citizen of Cote d'Ivoire, Tiede's "removal, and thus his continued confinement pending removal, are the direct result his failure to cooperate." *Diallo*, 2007 WL 5230798, at *3. Tiede's Petition thus should be denied.

Moreover, "removal is 'reasonably foreseeable' when ICE is taking active steps to secure removal at some point in the future." *Clarke v. Kuplinski*, 184 F. Supp. 3d 255, 260 (E.D. Va. 2016) (quotation marks, citation, and alterations omitted). The no-significant-likelihood-of-removal requirement "poses a formidable obstacle where, as in the case of [either France or Cote d'Ivoire], no apparent obstacles impede removal to a country." *Bah v. Barr*, No. 1:19-CV-641, 2019 WL 4247823, at *3 (E.D. Va. Sept. 6, 2019). ICE is taking "active steps" to effectuate the removal of Tiede and continuing its efforts to remove Petitioner to either France or Cote

d'Ivoire. Graham Decl. ¶ 26; Oct. 27 Trump Decl. ¶¶ 5-10; *Clarke v. Kuplinski*, 184 F. Supp. 3d

255, 260 (E.D. Va. 2016) ("[T]he record reflects consistent, periodic contact between ICE and

the Jamaican government. Such contact negates Clarke's argument that ICE has not done

anything to effect his removal to Jamaica in the foreseeable future.") (internal quotation marks

and citation omitted). Nor are there any structural or diplomatic obstacles to removal to either

France or Cote d'Ivoire. Graham Decl. ¶ 26. To the contrary, once either France or Cote d'Ivoire

issues travel documents for Petitioner, ICE anticipates that it will be able to timely effectuate

Petitioner's removal; ICE successfully removed 85 individuals to France in fiscal year 2018,[12] 82

individuals in fiscal year 2017,[13] and 59 individuals in fiscal year 2016.[14] ICE successfully

removed 82 individuals to Cote d'Ivoire in fiscal year 2018,[15] 13 individuals in fiscal year

2017,[16] and 16 individuals in fiscal year 2016.[17] *See Clarke*, 184 F. Supp. 3d at 261 (E.D. Va.

2016) ("[B]oth ICE and the Jamaica government have actively been working together to obtain

Clarke's birth certificate so that travel documents can be issued. . . . Although that birth

certificate actually belonged to a different Mr. Clarke, Clarke simply has not demonstrated that

Jamaica would hesitate to issue a new travel document once the correct birth certificate is

located. Accordingly, Clarke has failed to meet his burden of demonstrating that his removal to

---

[12] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2018 ICE Enforcement and Removal Operations Report at 18, available at https://www.ice.gov/doclib/about/offices/ero/pdf/eroFY2018Report.pdf.
[13] *Id.*
[14] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2017 ICE Enforcement and Removal Operations Report at 15, available at https://www.ice.gov/sites/default/files/documents/Report/2017/iceEndOfYearFY2017.pdf.
[15] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2018 ICE Enforcement and Removal Operations Report at 18, available at https://www.ice.gov/doclib/about/offices/ero/pdf/eroFY2018Report.pdf.
[16] *Id.*
[17] *See* U.S. Immigration and Customs Enforcement, Fiscal Year 2017 ICE Enforcement and Removal Operations Report at 17, available at https://www.ice.gov/sites/default/files/documents/Report/2017/iceEndOfYearFY2017.pdf.

Jamaica is not reasonably foreseeable."). And even assuming either France or Cote d'Ivoire ultimately refuse to accept Tiede, ICE would be authorized to remove Petitioner to a third country. 8 U.S.C. § 1231(b)(2)(E)(i)-(vii) (authorizing removal to an alternate countries, including "another country whose government will accept the alien into that country"); *Pelich*, 329 F.3d at 1061 ("More importantly, even if Pelich is not a Polish national, he can be deported to the country of his birth or to a country where he resided prior to entering the United States (assuming these countries would take him).") (citing 8 U.S.C. § 1231(b)(2)(E)). Tiede cannot establish that his removal is not reasonably foreseeable.

Finally, as set forth above, Tiede is not entitled to a bond hearing or immediate release from detention. But should the Court disagree and conclude that he is entitled to relief, immediate release from detention is not an appropriate remedy. Instead, Tiede would be entitled only to a bond hearing before an immigration judge. *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 225 n.13 (3d Cir. 2018) ("Furthermore, we emphasize that aliens are not necessarily entitled to release after prolonged detention. Rather, they are owed only a bond hearing before an immigration judge to determine if they pose either a flight risk or a danger to the community. An alien will be released only if the immigration judge answers both inquiries in the negative.") (addressing § 1231(a)(6)); *see also Lema*, 341 F.3d at 857 n.7 ("We also believe that removable aliens should not be rewarded with release into the United States for their bad behavior in refusing to assist officials to effect their removal.").

V.    **Conclusion**

For the foregoing reasons, this Court should deny Petitioner's petition for a writ of habeas corpus.

Dated: October 27, 2020                              Respectfully submitted,

                                                     G. ZACHARY TERWILLIGER
                                                     UNITED STATES ATTORNEY

                                          By:    /s/
                                                 Jonathan T. Lucier
                                                 VSB No. 81303
                                                 Attorney for Respondents
                                                 Office of the United States Attorney
                                                 919 East Main Street, Suite 1900
                                                 Richmond, Virginia 23219
                                                 Telephone: (804) 819-5400
                                                 Fax: (804) 771-2316
                                                 Email: jonathan.lucier@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on October 27, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and served the Petitioner, who is a non-ECF user, by depositing a true copy of the same in the U.S. mail in a prepaid envelope addressed as follow:

Raymond Tiede
A200397367
Farmville Detention Center
508 Waterworks Road
Farmville, VA 23901

/s/
Jonathan T. Lucier
VSB No. 81303
Attorney for Respondents
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5400
Fax: (804) 771-2316
Email: jonathan.lucier@usdoj.gov