Case 3:19-cv-00589 REP-RCY

December 3, 2020

**United States District Court**

**Eastern District Of Virginia**

**Richmond Division**



| | |
|---|---|
| RAYMOND TIEDE, ) | |
| Petitioner, ) | |
| v. ) | **Case No.:** 3:19-cv-00589 |
| ) | |
| JEFFREY CRAWFORD, ) | |
| Respondent, ) | |
| ) | |
| _____ ) | |

## REPLY IN SUPPORT OF PETITIONER
## MEMORANDUM TO OPPOSE THE RESPONDENT MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Petitioner Raymond Tiede (Mr.Tiede) pro se, now filing this reply memorandum of support to oppose respondent (ICE) motion to dismiss or in the alternative, motion for summary judgment. According to the Respondent (ICE), the only reason (ICE) claim Mr. Tiede did not fully cooperate in his removal is the fact that French authorities claimed he is not a French citizen, because his birth certificate submitted is fraudulent. This argument should be rejected by this Honorable Court for the forgoing reason.

**Argument:**

Mr. Tiede has fully and personally cooperate with (ICE) in his removal to France his country of birth. He first personally submitted all the proof of his citizenship, birth certificate, passport and his identification card (ID). Secondly he has attended all interviews with (ICE) and the Embassy of his country. He has never refrain from cooperating with (ICE) on anything. However (ICE) still stating he is not cooperating with them, because the French Embassy and the authorities stated that he is not a French citizen.

Now whatever French authorities stated to (ICE) has "nothing to do with Mr. Tiede" because he has done all he can to prove his citizenship and he cannot put words in the French Embassy authorities mouth or force them to accept him. (ICE) tend to suck up to whatever the French authorities has told them. And Mr. Tiede has nothing to do with that, and has nothing else to offer, therefore this is a quarrel that (ICE) should pick up with the French authorities and not Mr. Tiede, because he has no power nor control over what the authorities told (ICE), and has done all he can to personally cooperate in his own removal. Now the burden is on (ICE) to remove him. Stop insinuating their position on this removal; furthermore, stop making excuses for their miserable failures to do so. Because (ICE) cannot bully the French authorities in to doing anything, they in turn are punishing Mr. Tiede for not being able to get further with the French authorities. What more can Mr. Tied do? Now that he is helpless under this state of affairs.

(ICE) should pick up this quarrel with the French Embassy. For one, French authorities in France has fully authenticated his birth certificate, and therein after, issued a passport that Mr. Tiede used to depart France and enter the United State of America, one of the top countries known for their sophisticate inspection of arriving immigrants. The French authorities has never one time dispute the fact that they had issued this passport; and did not find Mr. Tiede birth certificate fraudulent at that instant. France is not a third world country. It has state of art equipment and well trained experienced personals to authenticate these types of documents and skillfully inspect them for any type of fraud. Moreover, at the time of issuing Mr. Tiede passport, French authorities finds his birth certificate to be legitimate and not fraudulent as (ICE) claims the French authorities stated.

Secondly, while Mr. Tiede is in the United States, he applied for an identification card from the French Embassy in Washington, D.C. To obtain this identification card, Mr. Tiede again submits his birth certificate to French authorities in Washington D.C. The French Embassy and authorities authenticated his birth certificate and issued the identification card. The French authorities did not find any issue(s) or dispute with Mr. Tiede's citizenship claims and his birth certificate. This same Embassy now states Mr. Tiede's birth certificate is fraudulent. Again, French authorities did not dispute the fact that they had issued his identification card. In so many words, French authorities even acknowledge that they issued this identification card, but now claim it was obtained on the basis of a false birth certificate.

Case 3:19-cv-00589 REP-RCY

December 3, 2020

This same birth certificate was not fraudulent when at the time of issuing Mr. Tiede's passport in France; and when issuing the identification card. These are questions ICE should be contending with the French authorities. Instead, they are punishing Mr. Tiede for their lack of performance in their duties to remove Mr. Tiede to his country of origin, France. Whatever the French authorities has told ICE, there is nothing Mr. Tiede can do about it. He has fully cooperated with ICE and the burden is now on ICE to do their job and stop pointing finger and take this fight up with the French Embassy and not with Mr. Tiede.

If we should take a look at the leading case in this matter before us, *Zadvydas v. Davis,* 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) KESTUTIS ZADVYDAS who had been born, apparently of Lithuanian parents, in a displaced-persons camp in Germany was ordered deported based on his criminal record. However, both Germany and Lithuania refused to accept the alien on the ground that he was not a citizen of their respective countries. Even though ICE known he was born in that country, Germany, it did not stop Germany or Lithuania from claiming he was not a citizen of their country. Just as in this case, even though France had issued Mr. Tiede passport and identification card, and at that time did not find his birth certificate fraudulent, they now claiming he is not a citizen of their country.

Also see; Aden v. Nielsen, 409 F. Supp. 3d 998, 2019 U.S. Dist. LEXIS 103569 (W.D. Wash., June 20, 2019) Petitioner NAJIB ALI ADEN was born in a refugee camp in Kenya to Somali parents and was orphaned as an infant. He was raised by an aunt in the Kenyan camp and came

to the United States as a refugee in 2007 "when he was 15 years old". Petitioner applied for lawful permanent residence in December 2011 and his application was approved in May 2012.

In 2014, petitioner was convicted of robbery offenses in King County, Washington. After he served his sentence, the Department of Homeland Security ("DHS") took him into custody and detained him at the Northwest Detention Center. During an initial interview with an immigration officer on October 4, 2017, petitioner indicated that he is a native and citizen of Kenya and that his deceased parents were natives and citizens of Somalia. The same day, DHS initiated removal proceedings against him by filing a Notice to Appear ("NTA"), which alleged that he is removable based on his robbery convictions. The NTA also alleged that he is a native and citizen of Kenya. DHS determined that petitioner should be detained pending his removal proceedings. During removal proceedings, petitioner admitted the allegations in the NTA, including that he is a native and citizen of Kenya. Petitioner designated Kenya as the country of removal. Somalia was not discussed during the removal proceedings as {2019 U.S. Dist. LEXIS 4} an alternative country of removal. On December 20, 2017, the IJ ordered him removed to Kenya.

On January 9, 2018, U.S. Immigration and Customs Enforcement ("ICE") Deportation Officer Jose Alvarez submitted a travel document request to the Kenyan government on petitioner's behalf, which asserted that petitioner was a native and citizen of Kenya. On February 26, 2018, the Consulate General of the Republic of Kenya issued a determination finding that petitioner is not a citizen of Kenya and denying ICE's request for a travel document.

Again ICE knows he was from Kenya. But that did not stop Kenya from finding that the petitioner was not a citizen of their country. Even though he was born in that country and live in

that country until he was 15 years old when he move to the United States. Just as in this case ICE know that Mr. Tiede is from France and at sometime lived in France whereat he obtain his travel documents to come to the United States, but that did not stop France from claiming he is not a citizen of there country.

Also In March 2018, Officer Alvarez informed petitioner that Kenya had denied his request for a travel document and that ICE would be seeking a travel document from Somalia. The parties dispute what occurred during this conversation. Petitioner{2019 U.S. Dist. LEXIS 5} avers that he told Officer Alvarez that he was afraid to go to Somalia and would want to reopen his case to fight any efforts to send him there. According to petitioner, Officer Alvarez told him that he could reopen his case but they should get a travel document first. Officer Alvarez, on the other hand, declares that petitioner stated he did not want to go to Somalia, but he never stated he was afraid he would be harmed there. Officer Alvarez left petitioner with paperwork to fill out that would assist in obtaining a travel document from Somalia. When petitioner and Officer Alvarez next met to discuss obtaining a travel document to Somalia, petitioner refused to cooperate. Petitioner stated that he wanted to reopen his case and was consulting with an attorney. On March 21, 2018, Officer Alvarez submitted a Somali travel document application on petitioner's behalf, claiming that petitioner was a native of Kenya and a citizen of Somalia; and falsely claim that petitioner lived in Somalia. (Just as Graham, who provided false information in his declaration). Officer Alvarez completed the application based on information provided by petitioner but without petitioner's assistance or review. As petitioner points out, there appear to

be several errors in the application including that petitioner was born in Somalia, not Kenya, and that he had previously lived in Somalia when in fact he has never been there.

On March 30, 2018, ICE released petitioner from immigration custody on an order of supervision because it had determined that removal was not significantly likely in the reasonably foreseeable future. The release notification letter informed petitioner that ICE would continue to make efforts to obtain a travel document and, "Once a travel document is obtained, you will be required to surrender to ICE for removal. You will, at that time, be given an opportunity to prepare for an orderly departure." These are the same measures ICE should have taken on this case. Since France is unwilling and refuse to accept Mr. Tiede as their citizen. The proper measures to take are to release Mr. Tiede on supervision until they could obtain the proper travel documents for his removal to France.

<u>After a final order of removal DHS is tasked with removing the noncitizen.</u> *See* 8 U.S.C. 1231(b)(2). The regulations provide that if DHS "is unable to remove the [noncitizen] to the specified or alternative country or countries, the order of the immigration judge does not limit the authority of [DHS] to remove the [noncitizen] to any other country{2019 U.S. Dist. LEXIS 19} as permitted by [ 1231(b)]." 8 C.F.R. 1240.12(d) Subject to the prohibition on removal to a country where the noncitizen's life or freedom would be threatened, *see* 8 U.S.C. 1231(b)(3), 1231(b)(2) requires DHS to {409 F. Supp. 3d 1018} remove the noncitizen to his or her country of choice unless certain exceptions apply, in which case it shall remove the noncitizen to a country of which he or she is a "subject, national, or citizen." 8 U.S.C. 1231(b)(2)(A), (C). If the

government of that country is not willing to accept the noncitizen into the country or fails to respond to DHS's inquiries within a reasonable time, DHS shall remove the noncitizen to any other country as provided in 1231(b)(2)(E).

In this case at hand ICE has been reluctant in their duties to remove Mr. Tiede to his country of origin or any other country whatsoever. ICE has followed none of the regulation set out under section 8 U.S.C. 1231(b)(2). In this removal preceding, ICE is no closer to removing Mr. Tiede than when they first detained him in April of 2019. All that is put forth by ICE is he say and she say arguments. First, it was Mr. Tiede so call lawyer of record that has no name or gender told them that Mr. Tiede is from cote d'Ivory. Now, its French embassy that told them Mr. Tiede is not a citizen of their country; none of which has anything to do with Mr. Tiede personally refusing to cooperate in his removal and is not what this honorable court order them to do. The goal post has moved further and further. The Court Order was for ICE to show instance in which Mr. Tiede did not personally cooperate in his removal. ICE has failed to meet their ultimate burden. Therefore Mr. Tiede contend that there is no chance of removal in foreseeable future.

## Conclusion

Base on these forgoing reasons, this Court should deny the respondents motion to dismiss and respondents' motion for summary judgment, and grant Mr. Tiede petition for writ of habeas corpus and order him immediately release.

## Poof of Service

I certify that on __12 - 02 - 20__, I mailed a copy of this motion to Jonathan T. Lucier VSB No 81303 Attorney for Respondents at the office of the United States Attorney, 919 East Main Street, suite 1900 Richmond, VA 23219

Date __12 - 02 - 20__    Sign _____
                                Raymond Tiede